Carolyn J. Johnsen
Texas Bar No. 19844600
William L. Novotny (admitted pro hac vice)
Arizona Bar. No. 004239
Amanda E. Newman (admitted in N.D. Tex.)
Arizona Bar No. 032462
Kathryn E. Gasior (admitted in N.D. Tex.)
Arizona Bar No. 037062
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
cjjohnsen@dickinsonwright.com
wnovotny@dickinsonwright.com
anewman@dickinsonwright.com
kgasior@dickinsonwright.com
*Counsel for the Plaintiff Trustee of the*
*Fresh Acquisition Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>FRESH ACQUISITIONS, LLC, *et al*.,<br><br>Debtors. | Chapter 11<br><br>Case No. Case No. 21-30721 (SGJ)<br>(Jointly Administered) |
| DAVID GONZALES, TRUSTEE OF THE FRESH ACQUISITION LIQUIDATING TRUST,<br><br>                                   Plaintiff,<br>v.<br><br>RIVER NORTH FURR'S, LLC,<br>  an Illinois limited liability company,<br><br>                                   Defendant. | Adv. No. _____<br><br>**VERIFIED COMPLAINT TO AVOID TRANSFERS** |

*Verified Complaint*
*to Avoid Transfers*

1

Plaintiff David Gonzales, Liquidating Trustee ("Plaintiff" or "Trustee") on behalf of the Fresh Acquisition Liquidating Trust (the "Trust"), by its undersigned attorneys, alleges as follows for his Verified Complaint to Avoid Transfers against the Defendant, River North Furr's, LLC ("Defendant" or "River North"):

## I.  PARTIES, JURISDICTION, AND VENUE

1. This Court has subject matter jurisdiction over this adversary proceeding, which arises under Title 11 of the United States Code (the "Bankruptcy Code") and arises in and relates to a case under the Bankruptcy Code pending in the United States Bankruptcy Court for the Northern District of Texas, Case No. 21-30721 (SGJ) ("this Bankruptcy Case"), under 28 U.S.C. §§ 157(b)(2) & 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b). Plaintiff consents to entry of a final judgment by this Court with respect to the allegations and matters presented herein.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 & 1409(a).

4. This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. Pursuant to the Plan and Confirmation Order (each as defined below), this Court retained jurisdiction after the Effective Date (as defined below): (a) as to all proceedings and other matters arising in or relating to this Bankruptcy Case, including any adversary proceedings commenced after the Effective Date, and (b) in order to hear and determine any rights held by or accruing to the Trust pursuant to the Plan, this Bankruptcy Case, or any federal or state statute or legal theory.

6. Debtor FMP SA Management Group, LLC ("FMP") is a Texas limited liability company.

7. On April 20, 2021 (the "Petition Date"), FMP and the other Debtors in this Bankruptcy Case (collectively with FMP, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code; those proceedings remain pending.

8. The Trust was formed as of January 3, 2022, which was the "Effective Date" of *The Official Committee of Unsecured Creditors' First Amended Joint Chapter 11 Plan of Liquidation* filed on October 30, 2021 (the "Plan"), [Administrative Docket No. 498], which was confirmed pursuant to the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming The Official Committee of Unsecured Creditors' First Amended Joint Chapter 11 Plan of Liquidation* entered on December 20, 2021 (the "Confirmation Order") [Administrative Docket No. 587].

9. In accordance with the terms of the Plan and the Confirmation Order, on the Effective Date, the Trustee was granted the rights and powers of a debtor in possession under Bankruptcy Code Section 1107 and such other powers, rights, and duties to effectuate the provisions of the Plan.

10. In addition, in accordance with the terms of the Plan, the Confirmation Order, and the Fresh Acquisition Liquidating Trust Agreement (the "Trust Agreement") [Administrative Docket No. 499], on the Effective Date, (a) all Causes of Action[1] of the Debtors were vested in the Trust and the Trustee was conferred with standing to bring and prosecute the Causes of Action vested and transferred to the Trust on behalf of the Trust; and (b) all of the Debtors' assets as provided in Section 541 of the Bankruptcy Code were transferred to and vested in the Trust.

## II.   GENERAL ALLEGATIONS

11. On information and belief, Allen Jones ("Jones"), Jason Kemp ("Kemp"),

---

[1] This phrase uses the definition in the Plan.

*Verified Complaint*
*to Avoid Transfers*

3

Larry Harris ("Harris"), and Brian Padilla ("Padilla") (collectively, the "Owners") held various positions of control over the Debtors (as shareholders, members, managers, officers, and/or directors), directly or indirectly, at various relevant times.

12. At relevant times, the Owners collectively held a controlling interest in each of the Debtors, and all of the Debtors were controlled by the Owners.

13. Each of the Debtors' bankruptcy petitions filed in this Bankruptcy Case identified the Owners as the Debtors' "Governing Persons."

14. As of the Petition Date, the Owners were affiliates and insiders of the Debtors, including FMP.

15. Alamo Furr's, LLC ("Alamo Furr's") is a Texas limited liability company. On information and belief, it does business in Texas. On information and belief, its current members include citizens of Texas, and it does business in Texas. At relevant times and, on information and belief, as of the filing of this Complaint, Alamo Furr's members included the Owners.

16. The Debtors (as well as many of their insiders and affiliates, including Alamo Furr's) all operated out of the same principal place of business, at 2338 N. Loop 1604 W., Suite 350, San Antonio, TX 78248-4544.

17. Alamo Furr's is an affiliate and insider of the Debtors.

18. The Debtors were substantively consolidated in the Confirmation Order. [Administrative Docket No. 587, ¶ 14]. Specifically, the Court found:

> Substantive consolidation is warranted because it is clear that while the Debtors in form had separate operating entities, in substance they historically operated on a consolidated basis. All Debtors as well as many non-debtor Affiliates generally have the same officers, managers, and directors. Cash and other assets were regularly commingled between and among the Debtors and their non-debtor

> Affiliates. Additionally, the Debtors were managed by the same insider owned management companies, shared general accounting services, shared software systems and risk management services. Numerous Creditors filed duplicative claims in several of the Debtor entity cases thus indicating they viewed the Debtors as a single entity. It appears that unsecured creditors viewed the Debtors as a single entity when extending credit terms, as such negotiations and agreements customarily provided for services to be rendered to multiple restaurant brands and locations owned by various Debtors, and the Debtors capitalized upon the scale and operations of the entirety of the Debtors' business operations to negotiate such agreements and maximize value. Further, all accounts payable functions were performed from one centralized location, by the same administrative staff working on behalf of all Debtors, and virtually all debts were centralized and paid by one of the Debtor entities.
>
> Determining the sources of the Debtors' pre-petition assets and liabilities on a per-entity basis would involve the nearly impossible task of reviewing and categorizing records of thousands of individual transactions to trace such transactions back to the proper entity.

[*Id.*].

### III.  RIVER NORTH TRANSACTION AND TRANSFERS

19.  Along with the Owners, River North formerly was a member of Alamo Furr's.

20.  River North acquired its membership interests in Alamo Furr's pursuant to that Amended and Restated Limited Liability Company Agreement of Alamo Furr's, LLC dated June 19, 2014 ("LLC Agreement").

21.  Pursuant to the LLC Agreement, (a) the members of Alamo Furr's included only the Owners and River North, (b) with River North acquiring 1,750,000 series A membership units in Alamo Furr's and with River North receiving a preferred return, and (c) the Owners

causing BIII Wing, LLC ("BIII Wing), to guarantee the payment to River North of the preferred return pursuant to a Guaranty dated June 19, 2014 ("Guaranty").

22. By that Assignment and Assumption Agreement with Novation dated November 30, 2015 ("Assumption Agreement"), FMP assumed the obligations of BIII Wing under the Guaranty.

23. FMP has and has had no membership interests or other rights or interests of any kind in Alamo Furr's.

24. FMP received no consideration or benefit of any kind for entering into the Assumption Agreement, with the only benefits being derived solely by the Owners and River North.

25. In June 2019, River North sued FMP and the Owners in United States District Court for the Western District of Texas, Case No. 5:19-cv-757, alleging that River North was entitled to repayment of its capital contribution to Alamo Furr's and the preferred return, pursuant to the LLC Agreement, the Guaranty, and the Assumption Agreement ("River North Litigation").

26. The River North Litigation was settled on or about May 13, 2020, pursuant to that Redemption and Settlement Agreement and Release of All Claims dated as of May 13, 2020 ("Redemption Agreement"). The parties to the Redemption Agreement were FMP and River North, along with the Owners.

27. Under the Redemption Agreement, Alamo Furr's was to redeem all of River North's membership interests in Alamo Furr's in exchange for periodic payments by FMP to River North in the aggregate amount of $1,850,000 ("Redemption Price").

28. Although, and as a result of the redemption of River North's membership interests in Alamo Furr's, the Owners became the sole members of Alamo Furr's, the Redemption Price was paid by FMP, which received no consideration or benefit of any kind

for entering into the Redemption Agreement and for paying any portion of the Redemption Price to the Defendant.

29.  The Redemption Price was paid by FMP to River North both before and after the Petition Date and as follows:

| Date | Amount |
|---|---|
| 5/15/2020 | $500,000 |
| 6/1/2020 | $112,500 |
| 7/1/2020 | $112,500 |
| 7/31/2020 | $112,500 |
| 9/1/2020 | $112,500 |
| 10/1/2020 | $112,500 |
| 10/30/2020 | $112,500 |
| 12/1/2020 | $112,500 |
| 1/4/2021 | $112,500 |
| 2/1/2021 | $112,500 |
| 3/1/2021 | $112,500 |
| 4/1/2021 | $112,500 |
| | |
| Subtotal ("Pre-Petition Transfers") | $1,737,500 |
| 4/30/2021 ("Post-Petition Transfer") | $112,500 |
| Redemption Price | $1,850,000 |

30.  The Redemption Price was paid and made by FMP and the other Debtors for the benefit and the direction of the Owners.

31. The Debtors did not receive consideration or reasonably equivalent value for entering into the Redemption Agreement or for the payment of any portion of the Redemption Price.

32. The Debtors received various federal loans through the Paycheck Protection Program ("PPP Funds"), a program implemented by the Small Business Administration that provided small businesses with loans so they could maintain payroll during the COVID-19 pandemic, hire back employees who had been laid off, and cover applicable overhead, including mortgages, rent, and utilities.

33. The Owners, directly and indirectly, caused the Debtors to misuse the PPP Funds that the Debtors received.

34. Notwithstanding that the receipt of the PPP Funds was specifically designated for items such as payroll and rent, the Debtors (through the Owners) failed to direct or apply most of the PPP Funds to the permitted expenses.

35. On information and believe, all of the Redemption Price was paid or funded by the misuse and misapplication of the PPP Funds.

36. There was and is at least one creditor of the Debtors who held at all material times an unsecured claim that was and is allowable under 11 U.S.C. § 502.

### IV. CLAIMS FOR RELIEF

### CLAIM ONE

### Actual Fraudulent Transfer
### 11 U.S.C. § 548(a)(1)(A)

37. The Trustee re-alleges paragraphs 1 through 36 as though fully stated herein.

38. The Owners, directly or indirectly, caused FMP to incur the obligations under

the Redemption Agreement ("Redemption Obligation") and to make the Pre-Petition Transfers to River North.

39. The Redemption Obligation was incurred and the Pre-Petition Transfers to River North were made within two (2) years prior to the Petition Date.

40. The Redemption Obligation was incurred and the Pre-Petition Transfers to River North were made with the actual intent to hinder, delay, or defraud the Debtors' creditors.

41. The Redemption Obligation and the Pre-Petition Transfers are avoidable under 11 U.S.C. § 548(a)(1)(A).

42. The Trust is entitled to recover from the Defendant that property (or the value thereof) or the amount of the Pre-Petition Transfers, pursuant to 11 U.S.C. § 550(a).

## CLAIM TWO

### Actual Fraudulent Transfer
### 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.005(a)(1)
### (or other applicable state laws)

43. The Trustee re-alleges paragraphs 1 through 36 as though fully stated herein.

44. The Owners, directly or indirectly, caused FMP to incur the Redemption Obligation and to make the Pre-Petition Transfers to River North.

45. The Redemption Obligation was incurred and the Pre-Petition Transfers to River North were made within four (4) years prior to the Petition Date or within one (1) year after the Redemption Obligation and the Pre-Petition Transfers were or could reasonably have been discovered by the Trustee.

46. The Redemption Obligation was incurred and the Pre-Petition Transfers to River North were made with the actual intent to hinder, delay, or defraud any creditor of the Debtors.

47. The Redemption Obligation and the Pre-Petition Transfers are avoidable under 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.005(a)(1).

48. The Trust is entitled to recover from the Defendant that property (or the value thereof) or the amount of the Pre-Petition Transfers, pursuant to 11 U.S.C. § 550(a).

## CLAIM THREE

### Constructive Fraudulent Transfer
### 11 U.S.C. § 548(a)(1)(B)

49. The Trustee re-alleges paragraphs 1 through 36 as though fully stated herein.

50. The Owners, directly or indirectly, caused FMP to incur the Redemption Obligation and to make the Pre-Petition Transfers to River North.

51. The Redemption Obligation was incurred and the Pre-Petition Transfers to River North were made within two (2) years prior to the Petition Date.

52. FMP received less than a reasonably equivalent value in exchange for the Redemption Obligation and each of the Pre-Petition Transfers.

53. FMP and the other Debtors (a) were insolvent on the date that the Redemption Obligation was incurred by FMP and when each of the Pre-Petition Transfers was made by FMP, (b) became insolvent as a result of incurring the Redemption Obligation or when each of the Pre-Petition Transfers were made, (c) were engaged in businesses or a transactions, or were about to engage in businesses or a transactions, for which any property remaining with the FMP and the other Debtors was an unreasonably small capital, or (d) intended to incur, or believed that FMP and the other Debtors would incur, debts that would be beyond FMP and the other Debtors' ability to pay as such debts matured.

54. The Redemption Obligation and the Pre-Petition Transfers are avoidable under 11 U.S.C. § 548(a)(1)(B).

55. The Trust is entitled to recover from the Defendant that property (or the value thereof) or the amount of the Pre-Petition Transfers, pursuant to 11 U.S.C. § 550(a).

## CLAIM FOUR

### Constructive Fraudulent Transfer
### 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.005(a)(2)
### (or other applicable state laws)

56. The Trustee re-alleges paragraphs 1 through 36 as though fully stated herein.

57. The Owners, directly or indirectly, caused FMP to incur the Redemption Obligation and to make the Pre-Petition Transfers to River North.

58. The Redemption Obligation was incurred and the Pre-Petition Transfers to River North were made within four (4) years prior to the Petition Date.

59. FMP and the Debtors did not receive reasonably equivalent value in exchange for incurring the Redemption Obligation or for making the Pre-Petition Transfers.

60. At the time of incurring the Redemption Obligation and paying each of the Pre-Petition Transfers, FMP and the other Debtors (a) were engaged or were about to engage in businesses or transactions for which the remaining assets of FMP and the other Debtors were unreasonably small in relation to the businesses or transactions or (b) intended to incur, or believed or reasonably should have believed that FMP and the other Debtors would incur, debts beyond FMP's and the other Debtors' ability to pay as they became due.

61. The Redemption Obligation and the Pre-Petition Transfers are avoidable under 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.005(a)(2).

62. The Trust is entitled to recover from the Defendant that property (or the value thereof) or the amount of the Pre-Petition Transfers, pursuant to 11 U.S.C. § 550(a).

## CLAIM FIVE

### Constructive Fraudulent Transfer
### 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.006(a)
### (or other applicable state laws)

63. The Trustee re-alleges paragraphs 1 through 36 as though fully stated herein.

64. The Owners, directly or indirectly, caused FMP to incur the Redemption Obligation and to make the Pre-Petition Transfers to River North.

65. The Redemption Obligation was incurred and the Pre-Petition Transfers to River North were made within four (4) years prior to the Petition Date.

66. FMP and the Debtors did not receive reasonably equivalent value in exchange for incurring the Redemption Obligation or for making the Pre-Petition Transfers and were insolvent or became insolvent at the time of the execution of the Redemption Agreement and for each of the Pre-Petition Transfers.

67. The Redemption Obligation and the Pre-Petition Transfers are avoidable under 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.006(a).

68. The Trust is entitled to recover from the Defendant that property (or the value thereof) or the amount of the Pre-Petition Transfers, pursuant to 11 U.S.C. § 550(a).

## CLAIM SIX

### Post-Petition Transfer
### 11 U.S.C. § 549(a)

69. The Trustee re-alleges paragraphs 1 through 36 as though fully stated herein.

70. The Post-Petition Transfer to River North (a) was made from property of the Estate of the Debtors in this Bankruptcy Case, (b) occurred after the Petition Date, and (c) was not authorized under the Bankruptcy Code or by the Bankruptcy Court.

71. The Post-Petition Transfer is avoidable under 11 U.S.C. § 549(a).

72. The Trust is entitled to recover from the Defendant that property (or the value thereof) or the amount of the Post-Petition Transfer, pursuant to 11 U.S.C. § 550(a).

## V.    PRAYER FOR RELIEF

**WHEREFORE**, the Trustee respectfully requests that judgment be entered in favor of the Trust and against Defendant, as follows:

    A.    Claim One: Avoiding the Redemption Obligation and the Pre-Petition Transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

    B.    Claim Two: Avoiding the Redemption Obligation and the Pre-Petition Transfers pursuant to 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.005(a)(1).

    C.    Claim Three: Avoiding the Redemption Obligation and the Pre-Petition Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

    D.    Claim Four: Avoiding the Redemption Obligation and the Pre-Petition Transfers pursuant to 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.005(a)(2).

    E.    Claim Five: Avoiding the Redemption Obligation and the Pre-Petition Transfers pursuant to 11 U.S.C. § 544 and Texas Business and Commerce Code § 24.006(a).

    F.    Claim Six: Avoiding the Post-Petition Transfer pursuant to 11 U.S.C. § 549(a).

    G.    Entering a Judgment against the Defendant for the amount of the Pre-Petition Transfers, along with applicable interest both before and after the commencement of this action.

    H.    Entering a Judgment against the Defendant for the amount of the Post-Petition Transfer, along with applicable interest both before and after the commencement of this action.

    I.    Awarding the Plaintiff its' costs and, to the extent applicable, attorneys' fees incurred herein; and

J.    Such other and further legal and/or equitable relief as the Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 27th day of September, 2022.

**DICKINSON WRIGHT PLLC**

By: */s/William L. Novotny*
    Carolyn J. Johnsen
    William L. Novotny
    Amanda E. Newman
    Kathryn E. Gasior
    1850 North Central Avenue, Suite 1400
    Phoenix, AZ  85004
    *Attorneys for the Plaintiff*

## VERIFICATION

I, David Gonzales, in my capacity as the Liquidating Trustee of the Fresh Acquisition Liquidating Trust, declare under oath and penalty of perjury, that:

1. I am the Plaintiff in the foregoing Verified Complaint to Avoid Transfers ("Complaint").

2. I have reviewed the Complaint.

3. I know or believe that all allegations in the Complaint of which the Plaintiff has personal knowledge of, are true.

4. I believe the allegations in the Complaint of which the Plaintiff does not have personal knowledge of, are true based on specified information, documents, or both.

5. I have authorized the filing of the Complaint.

**DATED:** September 27, 2022.

*/s/David Gonzales*
David Gonzales